Michael I. Katz (CA State Bar No. 181728)
E-Mail: mkatz@mabr.com
Quincy Chuck (CA State Bar No. 307857)
E-Mail: qchuck@mabr.com
MASCHOFF BRENNAN
100 Spectrum Center Drive, Suite 1200
Irvine, California 92618
Telephone: (949) 202-1900
Facsimile: (949) 453-1104

Attorneys for Defendant Inland Products, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| MONGKOL MAHAVONGTRAKUL, individually and on behalf of other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>INLAND PRODUCTS, INC.,<br><br>Defendant. | Case No. 4:18-cv-07261-HSG<br><br>**DEFENDANT INLAND PRODUCTS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>(Declaration of Michael Wang and Declaration of Quincy Chuck concurrently filed herewith)<br><br>Date: April 25, 2019<br>Time: 2:00 p.m.<br>Courtroom: 2<br>Judge: Hon. Haywood S. Gilliam, Jr.<br><br>Complaint Filed: November 30, 2018 |

| | |
|---|---|
| 1 | **NOTICE OF MOTION AND MOTION** |
| 2 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: |
| 3 | PLEASE TAKE NOTICE that on April 25, 2019 at 2:00 p.m., or as soon thereafter as the |
| 4 | matter may be heard in Courtroom 2 of the above-entitled Court, located at 1301 Clay Street, Oakland, |
| 5 | CA 94162, defendant Inland Products, Inc. ("Inland" or "Defendant") will and hereby does move this |
| 6 | Court to dismiss plaintiff Mongkol Mahavongtrakul's ("Mahavongtrakul" or "Plaintiff") First |
| 7 | Amended Complaint for Damages and Injunctive Relief (ECF No. 21) ("FAC.") for lack of subject- |
| 8 | matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). |
| 9 | This motion is brought on the grounds that this Court cannot exercise subject-matter |
| 10 | jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), because the total |
| 11 | amount in controversy does not exceed CAFA's $5 million jurisdictional threshold. Accordingly, |
| 12 | Inland respectfully requests that the Court dismiss the FAC. |
| 13 | This motion is based on this Notice of Motion and Motion, the Memorandum of Points and |
| 14 | Authorities below, the concurrently filed Declaration of Michael Wang, Declaration of Quincy J. |
| 15 | Chuck, the files, records, and pleadings already on file in this action, and such other and further |
| 16 | evidence, papers, and arguments as may be submitted to or properly considered by the Court. |

DATED:  March 4, 2019                MASCHOFF BRENNAN

By:  */s/ Michael I. Katz*
     Michael I. Katz
     Quincy Chuck
Attorneys for Defendant INLAND PRODUCTS, INC.

---

1

**MOTION TO DISMISS**          Case No. 3:18-cv-07261-JSC

# MEMORANDUM OF POINTS AND AUTHORITIES

## A. INTRODUCTION

Federal courts are courts of limited jurisdiction, and the party seeking to invoke federal jurisdiction bears the burden of proving that federal jurisdiction is appropriate at the time the complaint is filed. A federal court must dismiss an action if "the court determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. Proc. 12(h)(3). Plaintiff asserts that this Court can exercise jurisdiction over this case under CAFA, 28 U.S.C. § 1332(d). Accordingly, as the party asserting federal jurisdiction, Plaintiff must demonstrate that at the time she filed the complaint at least one member of the putative class was a citizen of a different state than the defendant, the class size exceeded 100 members, and the amount in controversy exceeded $5,000,000. Here, the Court does not have jurisdiction over this case because there is less than $5 million at stake.

Here, Plaintiff has sued over alleged sales by Inland of two portable power sources ("Power Banks"). Plaintiff alleges that he purchased and tested two of Inland's Power Banks. Of note, Plaintiff alleges that Inland's products are sold through numerous different retailers, including Fry's Electronics, its website, Amazon.com, and other retailers. (FAC, ¶¶ 10, 17.) However, the FAC does not allege actually purchasing any of Inland's Power Banks from any retailer other than a single Fry's Electronics location in Contra Costa County. (FAC, ¶ 10.) The FAC also does not allege or identify *any* sales to customers in any other state, except this single sale in California. Based on the scant facts in the FAC, Plaintiff faces a high bar to even get certified as a class, let alone ultimately prevail on his claim.

For example, as Inland's products are sold at different retailers, each retailer chooses to describe Inland's products differently, with different levels of detail that Inland does not control. Plaintiff would have to show commonality amongst class members who purchased from different retailers and were exposed to very different marketing and product descriptions. As shown in the following screenshots, just three of the retailers, Fry's Electronics, Amazon.com, and Inland's own website have very different levels of description and emphasis:

- 3 USB-Ports for multiple devices charging simultaneously.
- Works on iPhone, iPad, Galaxy, and Android Devices
- Extend your phone with extra 24 hours talking
- Get Fast charging with 2.1A max output when used as a single USB port.
- Portable battery, power bank with flash light.

Phone/Tablet Pictured Sold Separately.

**Detailed Description**
(Manufacturer # )

**Specifications**

| | |
|---|---|
| Battery Type: | Li-ion |
| Input: | DC 5V/1A |
| Output: | DC 5V/2.1A |
| Power Capacity: | 10400MAH |
| Unit Weight: | 0.77 lbs |
| Unit Dimensions: | 5.51" x 2.36" x 0.87" (inches) |

Fry's Electronics (Chuck Decl., Ex. A.)

Description:
Slim shape, fashionable design , easy to bring

General Specifications:
Stock # 03249

Features:
- 3 USB-Ports for multiple devices charging simultaneously.
- Works on iPhone, iPad, Galaxy, and Android Devices
- Extend your phone with extra 24 hours talking
- Get Fast charging with 2.1A max output when used as a single USB port.
- Portable battery, power bank with flash light.

Technical Specifications
- Battery Type: Li-ion
- Input: DC 5V/1A
- Output: DC 5V/2.1A
- Power Capacity:10400MAH

Shipping Specifications
- Unit Weight: 0.77 lbs
- Unit Dimensions:: 5.51" x 2.36" x 0.87" (inches)
- UPC # 012405032494

Inland Website (Chuck Decl., Ex. C.)

- LTRA POWERFUL POWER BANK: Choose never to run out of battery again with this 10400mAh portable charger. Make sure your phone's battery never runs out of power. This External charger packs a HUGE capacity and yet remains very light and slim making it the PERFECT travel companion
- INCREASED PERFORMANCE WITH 3 USB OUTPUTS: This power bank lets you charge 3 devices at the same time. With a total of 5.1 A output, you can quickly charge any device you carry with you.
- ULTRA VERSATILE WITH MULTI-DEVICE CABLE: Charge almost any device you want with the included multi-device cable. No need to get yourself an adapter as the cable includes micro-usb and lightning connectors to charge most Phones, Tablets, MP3 and MP4 Players, Camera, Pokemon Go an many others.
- SAFE: The Power Bank has built-in protections to avoid over-charge, over-discharge, over-voltage, over-current, over-power, over-temperature and short-circuit. Recharge circle 500+ times. 100% quality guarantee.
- INBUILT FLASH LED LIGHTS AND LED DISPLAY - The power bank has 2 in-built flash LED lights which are bright enough to be of good help in emergency situations - making it a true emergency companion, be it battery charging or the need for light in the dark. The power bank also has an LED display which shows you the available capacity of the power bank - thus warning you when it needs to be charged.

Amazon.com (Chuck Decl., Ex. B.)

Plaintiff will have to show that each proposed class member actually considered the mAh of the Power Banks to be material in deciding to purchase. As can be seen in the screenshots above, customers could be drawn to Inland's Power Banks because of the three USB ports, Inland's Power Banks' built-in protections, the built-in flashlight, or as Inland's own first line advertises, the "slim shape" and "fashionable design." Customers, such as Plaintiff, may also experience real-life differences when using the Power Banks—if Plaintiff tested Inland's Power Banks using inefficient devices that generate a lot of heat or have inefficient circuit designs, Plaintiff may have experienced less charging capacity due to no fault of Inland's, much like a car not reaching its stated MPG if driven faster than intended. To address customer's expectations of real-life usage of Inland's Power Banks, and the fact that customers are unlikely to understand technical descriptions in terms of mAh, Inland made sure to provide a guideline as to the expected battery life when used with phones, informing customers that the Power Banks would provide an "extra 24 hours" of talk-time. Plaintiff

does not address this real-life usage guidance that Inland provided, nor the difficulties Plaintiff will have in certifying a class of customers who purchased from different retailers, saw different marketing and product descriptions, considered different aspects of the Power Banks to be material, and even those customers who would find battery capacity to be material, the differences between customers who found the arcane mAh technical specification to be material, rather than Inland's description of real-life usage in plain and ordinary terms.

Even if Plaintiff were able to get a class certified of all Inland's customers nationwide (despite not providing any evidence of purchasers outside of California, and the many differences between customers), Plaintiff would be hard-pressed to argue for even a fraction of the damages needed to maintain subject matter jurisdiction. Inland's total revenue from *all* sales of the two Power Banks at issue is *less than $200,000*, and the net profit from *all* sales of the two Power Banks at issue is *less than $24,000*. Further, Inland's total revenue from *all* sales of *all* Power Banks, including Power Banks not at issue (models that Plaintiff neither purchased nor tested, and hence does not have standing to sue over), is *less than $375,000* and the net profit from *all* sales of *all* Power Banks is *less than $50,000*. Thus, even if Plaintiff were to receive damages equal to *all* of Inland's revenue, even for Power Banks not at issue, and even if Plaintiff were to be awarded punitive damages and attorney fees (calculated using Ninth Circuit benchmarks), this would be less than 15% of the $5 million threshold required.

That is not all, Plaintiff has the burden to demonstrate a *possible* amount in controversy and Courts are clear that return of the full retail or wholesale price is *not* a proper measure, and that damages would have to take into account the value of the Power Banks that customers actually received. A more accurate maximum possible amount in controversy would be Defendant's net profits (as any reasonable value of the Power Banks the customers actually received would be at least Defendant's actual costs), *or less than $24,000*. This falls far short of the jurisdictional requirements.

Plaintiff cannot even come close to meeting his burden to establish jurisdiction, and this Court should therefore dismiss this case for lack of subject-matter jurisdiction.

**B. STATEMENT OF ISSUE TO BE DECIDED**

Whether this Court can exercise subject-matter jurisdiction over this action.

**C. FACTUAL AND PROCEDURAL BACKGROUND**

Inland sells a variety of consumer electronics and accessories, including, in the past, certain Power Banks. (Declaration of Michael Wang ("Wang Decl."), ¶ 3.) These include the two Power Banks at issue in the FAC, one with a stated capacity of 10,400 mAh ("10,400 mAh Power Bank") and one with a stated capacity of 20,800 mAh ("20,800 mAh Power Bank.") (Wang Decl. ¶ 2.) These Power Banks are sold through numerous retailers, including Inland's own website, Fry's Electronics, and Amazon.com. (FAC, ¶¶ 10, 17.) Each retailer includes different descriptions of the Power Banks with different amounts of details and emphasizing different characteristics of the Power Banks. (Chuck Decl., Exs. A, B, C.) The Power Banks capacity in terms of mAh is only one of numerous descriptors and technical specifications provided. (Chuck Decl., Exs. A, B, C.) Recognizing that "mAh" is a technical term that customers may not readily understand or recognize, Inland also provides a description of the capacity of the batteries in real-life usage, noting that they can provide up to 24-hours additional talk time, a description that customers can readily understand and rely on. (Chuck Decl., Exs. A, B, C.)

Inland's Power Banks sold at low profit margins. (Wang Decl., ¶ 3.) As a result of low profit margins, Inland made a business decision in July of 2018 to discontinue its Power Banks business, and stopped importing any further Power Banks for sale. (Wang Decl. ¶ 3.) Inland finished clearing its stock, shipping its last 10,400 mAh Power Bank on October 5, 2018, and shipping its last 20,800 mAh Power Bank on July 9, 2018. (Wang Decl., ¶ 3.)

Inland shipped only 9,444 units of the 10,400 mAh Power Bank, resulting in net revenue of less than $81,000, and net profit of less than $11,000. (Wang Decl., ¶ 4.) The 20,800 mAh Power Bank fared even worse, with Inland shipping only 6,370 units, resulting in net revenue of less than $110,000, and net profit of less than $13,000. (Wang Decl., ¶ 5.) To be clear, Inland's total combined revenue for both Power Banks at issue is less than $200,000, and resulted in net profit of less than $24,000. (Wang Decl., ¶ 4-5.)

Inland's other Power Banks were also discontinued, with the last unit of *any* Power Bank sold on December 14, 2018. (Wang Decl., ¶ 6, Ex. A.) In total, Inland's sales of *all* Power Banks in the relevant period, resulted in a total revenue of only $371,498.20, and net profit of $47,571.17. (Wang Decl., ¶ 6, Ex. A.)

**D. ARGUMENT**

**1. The Court Lacks Subject-Matter Jurisdiction Over this Action**

This Court has the power to dismiss a case for lack of subject-matter jurisdiction "at any time." Fed. R. Civ. Proc. 12(h)(3); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 673 (9th Cir. 2012) (dismissing CAFA suit for lack of subject-matter jurisdiction; issue could be raised "at any time"). Here, Plaintiff asserts in the FAC that this Court can exercise subject-matter jurisdiction under CAFA. (FAC, ¶ 7.) The party seeking to invoke federal jurisdiction under CAFA must prove by a preponderance of the evidence that (1) at least one member of the putative class is a citizen of a different state than the defendant; (2) the class size exceeds 100 members; and (3) the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d); *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013); *Abrego Abrego v. The Dow Chem. Co.,* 443 F.3d 676, 683 (9th Cir. 2006) (where an amount sought for recovery is not included in the complaint, party seeking to assert federal jurisdiction must show it is more likely than not that the $5 million bar is cleared). Here, because Plaintiff seeks to invoke the Court's jurisdiction, Plaintiff bears the burden of establishing that the jurisdictional requisites have been met. *See Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) ("When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion."), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010). Plaintiff cannot satisfy his burden.

**2. CAFA's $5,000,000 Amount in Controversy Requirement**

Under CAFA, there must be in excess of $5,000,000 in controversy at the time the complaint is filed. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570-71 (2004) (diversity jurisdiction is determined based on situation when complaint filed.) The amount in controversy may include the class's potential recovery, attorney's fees (if a prevailing plaintiff would be entitled to attorney's fees and can provide a "reasonable estimate of the fees likely to be incurred"), and the value of any equitable relief requested. *See Giannini v. Nw. Mut. Life Ins. Co.*, No. 12-cv-0077, 2012 WL 1535196, at *4 (N.D. Cal. Apr. 30, 2012); *Lyon v. W.W. Grainger Inc.*, No. 10-cv-0884, 2010 WL 1753194, at *6 (N.D. Cal. Apr. 29, 2010).

In order to determine if the amount in controversy requirement is satisfied, the Court may consider affidavits or other evidence submitted by the parties. *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010). Although an exhaustive accounting of possible damages is not necessary, federal jurisdiction cannot be maintained on "speculation and conjecture." *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1117-18 (C.D. Cal. 2010) (amount in controversy requirement not met where party seeking to invoke jurisdiction relied on untenable assumptions and projections). Following these principles in the case currently before the Court, even if one were to include the monetary recovery the putative class would be entitled to if successful on the claims asserted, punitive damages, 25% of that figure in attorney's fees, and the cost of an injunction, the amount in controversy would be only 1% of the $5 million requirement.

### a. Maximum Actual Damages Possible is Less than $24,000.

Damages can be calculated by calculating "[t]he difference between what the plaintiff paid and the value of what the plaintiff received." *See e.g. Jones v. ConAgra Foods, Inc.*, C 12-01633 CRB, 2014 WL 2702726, at *19 (N.D. Cal. June 13, 2014) (noting, however, that return of the full retail or wholesale prices is not a proper measure of restitution); *see also Ries v. Ariz. Beverages USA LLC,* No. 10–1139, 2013 WL 1287416, at *7 (N.D.Cal. Mar. 28, 2013); *In re Vioxx Class Cases*, 180 Cal.App.4th 116, 103 Cal.Rptr.3d 83, 96 (2009). Thus, any measure of damages would start with a maximum of the defendant's overall revenue, then either subtracting out the value of the products the plaintiff actually received, or subtracting out the revenue defendant would have gotten by comparison with other comparable products.

Here, even if we assume the value of the Power Bank received by customers was equal to Inland's costs, the maximum amount of possible actual damages would be Inland's profit margin from sales of the Power Banks – or $24,000 for just the Power Banks at issue, or $47,571.17 for all Power Banks sold by Inland. (*See* Wang Decl., ¶¶ 4-5, 6.) Plaintiff plead that the actual amount of "monetary damages" would be "determined at trial," but the maximum possible amount would be $24,000 for the Power Banks at issue, or $47,571.17 if Plaintiff is able to maintain suit over *all* Power Banks despite lacking standing or basis to sue.

Even if Plaintiff were to ignore case law[1] and argue that Inland's entire revenue from these Power Banks should be the calculation of damages (representing a windfall to plaintiffs who would essentially receive Inland's Power Banks for free, the *maximum* amount would be $200,000 for the Power Banks at issue, and $371,498.20 for *all* Power Banks sold by Inland, still well short of the required amount. (*See* Wang Decl., ¶¶ 4-5, 6.)

### b. Maximum Attorney Fees Possible for Purposes of Amount in Controversy is $6,000.

Attorney's fees may be included in the amount in controversy if there is a legal basis for potentially awarding attorney's fees to a prevailing plaintiff. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007). If there is a basis to include attorney's fees in the calculation, to the Ninth Circuit's "benchmark" of 25% of the common fund (the amount of compensatory damages) is normally used to calculate this. *Jasso v. Money Mart Express, Inc.*, No. 11-cv-5500, 2012 WL 699465, at *7 (N.D. Cal. Mar. 1, 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)); *see also Giannini*, 2012 WL 1535196, at *4 (using 25% of the compensatory damages sought to calculate attorney's fees for CAFA amount in controversy purposes).

Here, based on an absolute maximum amount of less than $24,000 in compensatory damages, the benchmark attorney fees recoverable is less than $6,000. Even if Plaintiff can maintain suit over products he neither bought or tested, recoverable attorney fees based on *all* Power Banks is still below $11,000.

### c. The Benchmark Punitive Damages Recoverable is Less than $24,000.

When calculating potential punitive damages for the purposes of determining whether amount in controversy meets the requirements for jurisdiction under the Class Action Fairness Act, courts will normally apply a 1:1 ratio between punitive and economic damages for the purposes of estimating the amount in controversy. *See e.g. Bayol v. Zipcar, Inc.,* 2015 WL 4931756, at *9 (N.D. Cal. Aug. 18, 2015) (*citing Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 698 (9th Cir. 2007)).

First, Plaintiff would have to show that he is more likely than not to prove Inland had the

---

[1] Plaintiff's FAC purports to seek "disgorgement of funds paid to Defendant" as a remedy. (Dkt. No. 21, ¶ 42.) Such relief is improper as it fails to account for the value of what plaintiff received.

required knowledge and intent to merit awarding punitive damages to even add this figure into the amount of controversy. Even if Plaintiff meets this burden, the maximum possible amount of punitive damages would just match Plaintiff's maximum actual damages, or $24,000. Even if using Inland's total revenue of $200,000 to calculate economic damages (and, as stated in Section 2(a) of this brief, this would be an incorrect measure and the actual possible damages is far lower), there is no way for punitive damages recoverable to exceed $200,000. Even if using Inland's total revenue from all Power Banks of $371,498.20 to calculate economic damages (and, as stated in Section 2(a) of this brief, Plaintiff has neither standing nor factual basis to maintain suit over all Power Bank models), there is no way for punitive damages recoverable to exceed $371,498.20.

### d. The value of any equitable relief is $0.

To calculate the value of equitable relief, there are two potential methods to calculate value. If the class action simply seeks to assert the individual rights of plaintiffs en masse, the test is the cost to the defendant of an injunction as to a *single* plaintiff. *In re Ford Motor Co./Citibank (S.D.), N.A.*, 264 F.3d 952, 959 (9th Cir. 2001); *see also Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 859 (9th Cir. 2001) ("[I]n class actions asserting the separate and distinct claims of class members . . . the defendant's-viewpoint approach was inappropriate"). This is the appropriate test in the vast majority of cases. *In re Ford Motor Co.*, 264 F.3d at 959. In the few cases where the class seeks to assert "a single title or right in which they have a common and undivided interest," the court calculates the cost of the injunction under the "either viewpoint" rule and adds in either the benefit of the injunction to the class or the cost of compliance to the defendant. *Id*. This method of calculation, however, applies only to actions "which involve a single indivisible res, such as an estate, a piece of property (the classic example), or an insurance policy. These are matters that cannot be adjudicated without implicating the rights of everyone involved with the res[.]" *Id.* (citation omitted); *see also Lyon*, 2010 WL 1753194, at *2 (rejecting "either viewpoint" analysis because plaintiffs were not asserting an indivisible right).

Here, however, under either approach – the value of any equitable relief is $0. Inland discontinued its Power Banks business in July of 2018, months before this suit was filed. (Wang Decl., ¶ 3.). Inland shipped the last unit of the 10,400 mAh Power Bank on October 5, 2018, and the

20,800 mAh Power Bank on July 9, 2018. (Wang Decl., ¶ 3.) As Inland is no longer in the business of selling the Power Banks identified in the Complaint, or indeed any Power Banks at all – the cost of an injunction against Inland would be $0.

### 3. Plaintiff Cannot Demonstrate that the Amount in Controversy Exceeds $5,000,000

To calculate the amount in controversy the Court need only add: (1) the aggregate value of the putative class's claim; (2) the value of Plaintiff's injunctive relief; and (3) 25 percent of attorney's fees.

As for the aggregate value of the putative class's claim, the maximum amount of economic damages possible would be less than $24,000, and the maximum amount of punitive damages would be less than $24,000. The value of Plaintiff's injunctive relief is $0, as Inland discontinued its Power Banks product lines months before this suit was filed. The maximum value of attorney fees for the purposes of calculating attorney's fees would be less than $6,000.

In total, the absolute maximum amount in controversy would less than $54,000, only 1% of the $5 million required.

Even if Plaintiff were to argue that Defendant's entire revenue should be the basis of damages, despite contrary case law, the maximum amount in controversy would still only be $450,000, falling short of even 10% of the $5 million jurisdictional minimum.

Finally, even if Plaintiff were to argue that Defendant's entire revenue from *all* Power Banks should be the basis of damages, despite contrary case law and lacking standing or factual basis, the maximum amount in controversy would still be below $750,000, less than 15% of the $5 million jurisdictional minimum.

## E. CONCLUSION

For the foregoing reasons, the amount in controversy does not even come close to meeting the jurisdictional requirement of $5 million. Accordingly, there is no subject-matter jurisdiction under CAFA, and this action should be dismissed.

DATED: March 4, 2019           MASCHOFF BRENNAN

By: */s/ Michael I. Katz*
    Michael I. Katz
    Quincy Chuck
    Attorneys for Defendant INLAND PRODUCTS, INC.