1   **FINKELSTEIN, BLANKINSHIP,**
    **FREI-PEARSON & GARBER, LLP**
2   D. Greg Blankinship (*pro hac vice*)
    Jean M. Sedlak (SBN 267659)
3   445 Hamilton Ave, Suite 605
    White Plains, New York 10601
4   Telephone:  (914) 298-3290
    gblankinship@fbfglaw.com
5   jsedlak@fbfglaw.com

6   **KAPLAN FOX & KILSHEIMER LLP**
    Laurence D. King (SBN 206423)
7   Mario M. Choi (SBN 243409)
    350 Sansome Street, Suite 400
8   San Francisco, CA 94116
    Telephone: (415) 772-4700
9   Facsimile: (415) 772- 4707
    lking@kaplanfox.com
10  mchoi@kaplanfox.com

11  *Counsel for Plaintiff*

12              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
13                  **OAKLAND DIVISION**

14  MONGKOL MAHAVONGTRAKUL,              Case No. 4:18-cv-07261-HSG
    Individually and on Behalf of All Others
15  Similarly Situated,                  **PLAINTIFF'S MEMORANDUM OF LAW**
                                         **IN RESPONSE TO DEFENDANT'S**
16                          Plaintiff,   **MOTION TO DISMISS**
17       v.                              Judge:      Hon. Haywood S. Gilliam, Jr.
                                         Courtroom:  2, 4th Floor
18  INLAND PRODUCTS, INC.,               Date:       April 25, 2019
                                         Time:       2:00 p.m.
19                          Defendant.

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Table of Authorities……………………………………………….……………………....ii

Introduction………………………………………………………………………………1

Argument………………………..……………………………………………………………3

I.    This Court Should Not Dismiss the Complaint
for Lack of CAFA Jurisdiction Unless It Finds to a
Legal Certainty that There is Not $5 Million in Controversy……………………..………3

II.    Defendant has Failed to Show to a Legal Certainty
that the Amount in Controversy is Less than $5 Million…………………………………..5

III.    Plaintiff Should be Afforded the Opportunity to Take Jurisdictional Discovery…………8

IV.    Discovery Will Show That the Amount in Controversy is At Least $5 Million…………..9

      A.    Purchase Price is the Proper Measure of Damages for CAFA Purposes………....10

      B.    The Court Can Consider Plaintiff's Anticipated
Lodestar in Determining Amount in Controversy…………………………………11

      C.    A One to One Punitive Damages Ratio is Conservative…………………………12

      D.    The Value of Injunctive Relief is Plausibly $1.5 Million………………………...12

Conclusion…………………………………………………………………………………..13

# TABLE OF AUTHORITIES

Page

**Cases**

*Abrego Abrego* v. The Dow Chemical Co.,
   443 F.3d 676 (9th Cir. 2006)...................................................................................... 4

*Admiral Ins. Co. v. Aspen Ins. UK Ltd.*,
   No. 17-0703, 2017 WL 6945090 (S.D. Cal. June 16, 2017)...................................... 9

*Anderson v. Jamba Juice Co.*,
   888 F. Supp. 2d 1000 (N.D. Cal. 2012) ..................................................................... 7

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
   No. 11-2910, 2012 WL 2990766 (N.D. Cal. July 20, 2012)...................................... 7

*Ault v. J.M. Smucker Co.*,
   No. 13-3409, 2014 WL 1998235 (S.D.N.Y. May 15, 2014) ...................................... 7

*Bayol v. Zipcar, Inc.*,
   No. 14-02483, 2015 WL 4931756 (N.D. Cal. Aug. 18, 2015) ..................... 3, 4, 8, 12

*Bohac v. Gen. Mills, Inc.*,
   No. 12-05280, 2014 WL 1266848 (N.D. Cal. Mar. 26, 2014)..................................... 7

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008)..................................................................................... 8

*Brophy v. Almanzar*,
   No. 17-01885, 2018 WL 5094920 (C.D. Cal. May 3, 2018) ...................................... 9

*Brown v. Hain Celestial Group, Inc.*,
   913 F. Supp. 2d 881 (N.D. Cal. 2012) ....................................................................... 7

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*,
   788 F.2d 535 (9th Cir. 1986)....................................................................................... 8

*Colgan v. Leatherman Tool Grp., Inc.*,
   135 Cal. App. 4th 663 (2006)................................................................................... 13

*Crum v. Circus Circus Enter.*,
   231 F.3d 1129 (9th Cir. 2000)..................................................................................... 3

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
   135 S. Ct. 547 (2014) .................................................................................................. 4

*Data Disc, Inc. v. Systems Tech. Assoc., Inc.*,
   557 F.2d 1280 (9th Cir. 1977)..................................................................................... 9

*Diaz v. Paragon Motors of Woodside, Inc.*,
   424 F. Supp. 2d 519 (E.D.N.Y. 2006) ..................................................................... 11

# TABLE OF AUTHORITIES

Page

*Ebin v. Kangadis Food Inc.*,
  No. 13-2311, 2013 WL 3936193 (S.D.N.Y. July 26, 2013) ...................................................... 11

*Edwards v. N. Am. Power & Gas, LLC*,
  120 F. Supp. 3d 132 (D. Conn. 2015) ..................................................................................... 11

*Garcia v. ACE Cash Express, Inc.*,
  No. 14-0285, 2014 WL 2468344 (C.D. Cal. May 30, 2014) .................................................... 12

*Garnett v. ADT LLC*,
  74 F. Supp. 3d 1332 (E.D. Cal. 2015) ..................................................................................... 12

*Geographic Expeditions, Inc. v. Estate of Lhotka*,
  599 F.3d 1102 (9th Cir. 2010) ................................................................................................... 8

*Gibson v. Chrysler Corp.*,
  261 F.3d 927 (9th Cir. 2001) .................................................................................................... 12

*Guglielmino v. McKee Foods Corp.*,
  506 F.3d 696 (9th Cir. 2007) ............................................................................................... 4, 12

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .................................................................................................. 11

*Hines v. Wells Fargo Home Mortgage, Inc.*,
  No. 14-01386, 2014 WL 5325470 (E.D. Cal. Oct. 17, 2014) ................................................... 6

*Ignacio v. ADP Inc.*,
  No. 14-1115, 2014 WL 12639095 (C.D. Cal. Dec. 16, 2014) ................................................... 9

*In re Ford Motor Co./Citibank* (S.D.), N.A.,
  264 F.3d 952 (9th Cir. 2001) .................................................................................................... 12

*Ketchum v. Moses*,
  24 Cal. 4th 1122 (2001) ........................................................................................................... 11

*Kroske v. U.S. Bank Corp.*,
  432 F.3d 976 (9th Cir. 2005) .................................................................................................... 12

*Lanovaz v. Twinings N. Am., Inc.*, No.,
  12-2646, 2014 WL 46822 (N.D. Cal. Jan. 6, 2014) .................................................................. 7

*Laub v. U.S. Dep't of Interior*,
  342 F.3d 1080 (9th Cir. 2003) ................................................................................................... 8

*Lowdermilk v. U.S. Bank Nat'l Ass'n*,
  479 F.3d 994 (9th Cir. 2007) ..................................................................................................... 4

*Naffe v. Frey*,
  789 F.3d 1030 (9th Cir. 2015) ................................................................................................... 4

# TABLE OF AUTHORITIES

**Page**

*Novartis Corp. v. F.T.C.*,
  223 F.3d 783 (D.C. Cir. 2000) ............................................... 13

*Quinn v. Walgreen Co.*,
  958 F. Supp. 2d 533 (S.D.N.Y. 2013)..................................... 7

*Richardson v. Servicemaster Global Holdings, Inc.*,
  No. 09-4044, 2009 WL 4981149 (N.D. Cal. Dec. 15, 2009)..................... 5

*Robichaud v. Speedy PC Software*,
  No. 12-4730, 2013 WL 818503 (N.D. Cal. Mar. 5, 2013)......................... 5

*Rodriquez v. AT & T Mobility Services LLC*,
  728 F.3d 975 (9th Cir. 2013)................................................... 4

*Rosebrock v. Mathis*,
  745 F.3d 963 (9th Cir. 2014)................................................. 13

*Roth v. Comerica Bank*,
  799 F. Supp. 2d 1107 (C.D. Cal. 2010)...................................... 8

*Sanchez v. Monumental Life Ins. Co.*,
  102 F.3d 398 (9th Cir. 1996)................................................ 3

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
  303 U.S. 283 (1938)......................................................... 3

*Standard Fire Ins. Co. v. Knowles*,
  568 U.S. 588 (2013)................................................... 4, 5, 6

*Stearns v. Select Comfort Retail Corp.*,
  No. 08-2746, 2009 WL 1635931 (N.D. Cal. June 5, 2009)..................... 11

*Stern v. RMG Sunset, Inc.*,
  No. 17-1646, 2018 WL 2296787 (S.D. Cal. May 21, 2018)................... 10

*Suber v. Chrysler Corp.*,
  104 F.3d 578 (3d Cir. 1997)................................................ 11

*Tompkins v. Basic Research LLC*,
  No 08-244, 2008 WL 1808316 (E.D. Cal. Apr. 22, 2008)...................... 12

*Tosco Corp. v. Cmtys. for a Better Env't*,
  236 F.3d 495 (9th Cir. 2001)................................................ 4

*Wilson v. StratosphereCorp.*,
  371 F. App'x 810 (9th Cir. 2010) ........................................... 5

*Yumul v. Smart Balance, Inc.*,
  733 F. Supp. 2d 1134 (C.D. Cal. 2010)...................................... 6

1

**TABLE OF AUTHORITIES**

2

**Page**

3

*Zapata Fonseca v. Vigo Importing Co.*,
   No. 16-02055, 2016 WL 6249006 (N.D. Cal. Oct. 26, 2016) .................................................... 12

4

**Statutes**

5

28 U.S.C. § 1332(d)(2), (d)(5)(B) ............................................................................................. 5

6

28 U.S.C. § 1441 ...................................................................................................................... 4

7

CAL. BUS. & PROF. CODE § 17208 ........................................................................................ 6

8

**Rules**

9

Fed. R. Civ. P. 30(b)(6) ............................................................................................................ 9

10

**Other Authorities**

11

UCC § 2–719 .......................................................................................................................... 11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **INTRODUCTION**

Plaintiff Mongkol Mahavongtrakul ("Plaintiff"), on behalf of himself and other similarly situated individuals, respectfully submits this memorandum of law in opposition to Defendant Inland Products, Inc.'s ("Inland" or the "Defendant") motion to dismiss this action (ECF No. 29) ("Def. Mem.").  For cases originally filed in federal court, the amount in controversy as plead in good faith by the plaintiff controls at the pleading stage.  Because Plaintiff pleads that there is at least $5 million in controversy and because, as detailed below, he did so in good faith, Defendant's motion should be summarily denied.

Plaintiff's claim is as simple as it is compelling.  Plaintiff is a consumer residing in California.  Plaintiff filed the Complaint in the above-captioned action on November 30, 2018.  ECF No. 1.  Plaintiff alleges that he purchased Defendant's Power Banks, which Defendant manufactures, markets, and distributes to retailers nationwide for sale to consumers.  ¶¶3.[1]  Plaintiff alleges that Defendant represented that the Power Banks' capacity, measured in milliampere-hours ("mAh"), is substantially greater than it actually is.  ¶¶2.  Plaintiff alleges that testing by a reputable laboratory has shown that the actual mAh of Defendant's Power Banks is substantially below that represented by Defendant.  ¶¶18.

Defendant contends that the amount in controversy is less than $5 million, submitting the Declaration of Michael Wang in Support of Defendant Inland Products, Inc.'s Motion to Dismiss, dated March 4, 2019 ("Wang Decl.")  (ECF No. 29-2), as proof of what it claims are the sales and profits of the nine models it sold for a twenty-five-month period ("Power Banks").  The Court should not base its decision on this declaration.  First, the Court should not credit Mr. Wang's declaration because it appears to contain at least two false statements of fact.  Mr. Wang claims that Inland has ceased sales of Power Banks.  *See* Wang Decl. ¶ 6; *id.*, Ex. A (stating that Inland's Power Bank sales were discontinued, and the last unit of any Power Bank was sold on December 14, 2018).  However, after Mr. Wang submitted his first declaration on January 30, 2019, in which he stated that Inland no longer sold any Power Banks (*see* ECF No. 16-1, ¶ 3), Plaintiff's counsel purchased two Inland Power Banks from Inland's website

---

[1] "¶¶ __" refers to paragraphs in the Complaint.

(http://inlandproduct.com/powerbank.aspx), placing the orders on February 21, 2019.  Plaintiff's counsel's credit card was charged on February 21, 2019 by Inland, and Inland confirmed those charges via email on February 21, 2019.  *See* Decl. of D. Greg Blankinship in Supp. of Pltf's Resp. to Def.'s Mot. to Dismiss, dated March 8, 2019 ("Blankinship Decl."), Exs. A-E (attaching receipt and shipment confirmations).  Mr. Wang states that "the . . . 20,800 mAh Power Bank [is] discontinued, and Inland no longer sells [this] Power Bank . . . Inland shipped out its last 20,800 mAh Power Bank on July 9, 2018."  Wang Decl. ¶ 3-4.  But the Power Banks that Plaintiff's counsel purchased on February 21, 2019, and which were received on March 1, 2019 and March 7, 2019, are both the 20,800 model.  *See* Blankinship Decl., Exs. F-G (attaching photographs of the 20,800 models received by counsel).  Because Mr. Wang, under the penalty of perjury, submitted what appears to be false statements of fact in his declaration, this Court should not credit his other factual statements.

Second, Mr. Wang's declaration does not appear to address the sales of all Power Bank models Inland sold, nor does it appear to cover the entire applicable period.  Mr. Wang only professes to provide gross sales information for the nine models identified in the exhibit attached to his declaration.  Wang Decl., Ex. A.  Moreover, Mr. Wang only provides sales information for twenty-five months, November 2016 to December 2018.  *Id.*  However, based on publicly available historical information and Mr. Wang's declaration, it appears that Inland has sold at least seventeen different models since at least 2013.  By the Class Action Fairness Act's ("CAFA") plain terms, the scope of the class for purposes of determining the amount in controversy is the class as plead, not a limited class for which the Defendant chooses to provide information.  Therefore, Mr. Wang's declaration does not prove to a legal certainty that the amount in controversy is less than $5 million because it does not cover all sales to all putative class members.

Plaintiff is confident that jurisdictional discovery will demonstrate that there is at least $5 million in controversy.

1

## **ARGUMENT**

To dismiss this action for lack of CAFA jurisdiction, Inland must establish that the amount in controversy is less than $5 million to a legal certainty.[2]  Inland cannot do so.

### I.     This Court Should Not Dismiss the Complaint For Lack Of CAFA Jurisdiction Unless It Finds To A Legal Certainty That There Is Not $5 Million In Controversy.

To determine whether the amount in controversy is met pursuant to CAFA, courts look to the amount plead in the Complaint.  Here, Plaintiff pleads that the amount in controversy is at least $5,000,000.  *See* ¶ 7.  It is well settled that, for cases originally filed in federal court, "[t]he sum claimed by the plaintiff controls so long as the claim is made in good faith.  To justify dismissal, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount."  *Bayol v. Zipcar, Inc.*, No. 14-02483, 2015 WL 4931756, at *2 (N.D. Cal. Aug. 18, 2015) (denying motion to dismiss class action filed in federal court based on CAFA and quoting *Crum v. Circus Circus Enter.*, 231 F.3d 1129, 1131 (9th Cir. 2000)); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) (holding that "[t]he rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith.  It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.");  *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 402 (9th Cir. 1996) ("We agree . . . that the *St. Paul Mercury* 'legal certainty' test is applicable in . . . cases . . . brought in the federal court in which the plaintiff has filed a good faith complaint alleging damages in excess of the required jurisdictional minimum.").

Accordingly, "where a complaint, in good faith, alleges on its face a sufficient amount in controversy, that amount controls unless there is a legal certainty that the stated amount cannot be recovered . . . courts in the Ninth Circuit have stated that the amount in controversy requirement

---

[2] Defendant does not dispute that the other requirements of CAFA jurisdiction are met.

is 'presumptively satisfied' by a complaint that alleges a sufficient amount on its face, subject to the legal certainty test."  *Bayol*, 2015 WL 4931756, at *6 (citing *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 998 (9th Cir. 2007) (same), overruled on other grounds by *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013)).  As the Supreme Court affirmed, "[w]hen a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014).

The preponderance of the evidence standard is not applicable.  Cases cited by Defendant on this issue, which all arise in the context of removal rather than addressing cases originally filed in federal court, do not counsel otherwise.  As the Ninth Circuit explained:

> [T]the district court required Naffe to establish the amount in controversy by a preponderance of the evidence, and it dismissed her case when she failed to meet this burden.  That was error.  It is true that some cases warrant a more thorough inquiry into the facts underpinning jurisdiction than the legal certainty test permits. For example, where a party seeks to remove a case from state to federal court under 28 U.S.C. § 1441, the proponent of removal bears the burden of establishing federal jurisdiction by a preponderance of the evidence.

*Naffe v. Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015) (holding that "[w]hen a plaintiff files suit in federal court, we use the 'legal certainty' test to determine whether the complaint meets § 1332(a)'s amount in controversy requirement.").  Both *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676 (9th Cir. 2006), and *Rodriquez v. AT & T Mobility Services LLC*, 728 F.3d 975 (9th Cir. 2013), cited by Defendant, *see* Def. Mem. at 6, address the standard for cases removed from state court.[3]

Therefore, when a plaintiff pleads that the amount in controversy is at least $5 million, the

---

[3] Defendant also cites *Tosco Corp. v. Cmtys. for a Better Env't,* 236 F.3d 495, 499 (9th Cir. 2001), but that case concerns where a corporation's principle place of business is located, an issue not raised here.

defendant challenging jurisdiction must proffer proof showing to a legal certainty that there is not. *See Richardson v. Servicemaster Global Holdings, Inc.*, No. 09-4044, 2009 WL 4981149, at *3 (N.D. Cal. Dec. 15, 2009) ("In other words, when a plaintiff brings suit in federal court alleging that the amount in controversy exceeds the jurisdictional minimum, a defendant challenging the federal court's jurisdiction must establish to a legal certainty that plaintiff's claim does not satisfy the requisite jurisdictional amount."); *see also Wilson v. StratosphereCorp.*, 371 F. App'x 810, 811 (9th Cir. 2010) (treating the plaintiff's allegation that more than $5 million was in controversy as presumptively true and holding that "[the defendant] has failed to show to a legal certainty that the damages could not reach five million dollars."); *Robichaud v. Speedy PC Software*, No. 12-4730, 2013 WL 818503, at *7 (N.D. Cal. Mar. 5, 2013) (because the plaintiff had facially alleged more than $5 million in controversy, "[the defendant] must establish to a legal certainty that the amount in controversy is less than that amount.").

## II. Defendant Has Failed To Show To A Legal Certainty That The Amount In Controversy Is Less Than $5 Million.

The amount in controversy for CAFA purposes is determined by the scope of the class as plead by the plaintiff, not by whatever class may ultimately be certified. Indeed, the plain terms of CAFA provide that it is the "proposed" class that controls:

> CAFA provides the federal district courts with "original jurisdiction" to hear a "class action" if the class has more than 100 members, the parties are minimally diverse, and the "matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(2), (d)(5)(B). To "determine whether the matter in controversy" exceeds that sum, "the claims of the individual class members shall be aggregated." § 1332(d)(6). And those "class members" include "persons (named or unnamed) who fall within the definition of the *proposed* or certified class." § 1332(d)(1)(D).

*Standard Fire Ins. Co.*, 568 U.S. at 592 (emphasis in original). It is thus well settled that it is the composition of the putative class that determines the amount in controversy for CAFA purposes.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant's motion turns on the amount of sales from nine Power Bank models for the twenty-five-month period from November 2016 to December 2018.  Wang Decl., Ex. A.  But Plaintiff alleges a putative class comprised of consumers nationwide that purchased *any* of the Power Bank models Plaintiff has sold.  ¶ 21.  The Complaint also alleges that all Inland Power Banks are similarly marketed based on their mAh capacity, and that they all fail to provide the promised capacity.  ¶ 3.  Plaintiff's research, based on cached historical versions of its website, reveals that Defendant sold at least sixteen Power bank models.  *See* Blankinship Decl., Exs. H-J.  Mr. Wang's declaration does not cover the following models Defendant sold: Backup Battery Power Bank – 2200 mAh; Backup Battery Power Bank – 2600 mAh; Backup Battery Power Bank – 5000 mAh; Backup Battery Power Bank – 5200 mAh; Power Bank – 2600 mAh; Power Bank (red) – 2600 mAh; Power Bank (white) – 2600 mAh; and 12000 mAh Power Bank with Dual USB Charging Port for Smartphone.  *See generally* Wang Decl.  Mr. Wang's declaration also identified an additional model (Power Bank 8000 mAh USB Gray) Plaintiff's Counsel had not previously identified, bringing the total to seventeen.  *See id.*

Moreover, the Wang Declaration is incomplete regarding the time period at issue. Plaintiff filed his complaint on November 30, 2018.  ECF No. 1.  Given the four-year statute of limitations applicable to several of Plaintiff's claims, the applicable time period extends at least to November 30, 2014.  *See* CAL. BUS. & PROF.CODE § 17208 (setting a four-year statute of limitations for actions under the UCL).  In addition, the discovery rule applies to the classes' claims, as no reasonable consumer would have reason to know that the Power Banks' capacities were not as represented.  The delayed discovery rule tolls the statute of limitations on Plaintiff's claims.  *See Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1134, 1141 (C.D. Cal. 2010); *Hines v. Wells Fargo Home Mortgage, Inc.*, No. 14-01386, 2014 WL 5325470, at *6 (E.D. Cal. Oct. 17, 2014).  Therefore, for amount-in-controversy purposes, all of the Power Banks Inland has ever

sold in the United States are at issue.

Defendant cannot show to a legal certainty that purchasers of models other than those purchased by Plaintiff are not members of the putative class because "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012); *see, e.g.*, *Lanovaz v. Twinings N. Am., Inc.*, No. 12-2646, 2014 WL 46822 (N.D. Cal. Jan. 6, 2014) (plaintiff had standing to bring substantially identical claims regarding 45 varieties of tea, both purchased and unpurchased); *Ault v. J.M. Smucker Co.*, No. 13-3409, 2014 WL 1998235, at *7 (S.D.N.Y. May 15, 2014) ("Whether the plaintiffs' injuries are sufficiently similar to those of the putative class members who purchased other products-and whether plaintiffs will therefore adequately represent the interests of the class-is a question the Court will consider on a Rule 23 certification motion."); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 541 (S.D.N.Y. 2013) ("There is no question plaintiffs have standing to assert claims relating to the product they did purchase . . . [and] the appropriate time to consider whether plaintiffs can bring claims on behalf of purchasers of all of the various [other products] is at the class certification stage, not on a motion to dismiss."); *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012) (holding there was sufficient similarity because "all smoothie kits are labeled 'All Natural,' and all smoothie kits contain allegedly non-natural ingredients"); *Bohac v. Gen. Mills, Inc.*, No. 12-05280, 2014 WL 1266848, at *12 (N.D. Cal. Mar. 26, 2014) (denying motion to dismiss, holding that even though "ingredients and labeling vary across the 29 products, these differences do not change the fact that, as alleged, the challenged representations are the same and cause the same harm"); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. 11-2910, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012) (holding that

1

different flavors of ice cream carried under different brand names were sufficiently similar).

2

Defendant relies on *Roth v. Comerica Bank,* 799 F. Supp. 2d 1107 (C.D. Cal. 2010), to

3

4

argue that the amount in controversy requirement is not met where the party seeking jurisdiction

5

relied on speculation.  Def. Mem. at 7.  However, there is nothing speculative about what Plaintiff

6

has alleged in the Complaint.  Moreover, *Roth* involved a case where Defendants were attempting

7

to remove the case to federal court.  *Bayol,* 2015 WL 4931756, at *5 (N.D. Cal. Aug. 18, 2015)

8

(holding that "the standard for evaluating jurisdiction in removal cases is stricter than that for

9

cases originally filed in federal court" and citing *Geographic Expeditions, Inc. v. Estate of*

10

*Lhotka*, 599 F.3d 1102 (9th Cir. 2010)).

11

### III.     Plaintiff Should Be Afforded The Opportunity To Take Jurisdictional Discovery.

12

Because Mr. Wang's declaration is insufficient to demonstrate that there is any basis to

13

14

conclude that the amount in controversy is less than $5 million, this Court should summarily deny

15

Defendant's motion to dismiss.  But if the Court determines that Defendant has raised a colorable

16

argument that the amount in controversy is lacking, Plaintiff should be afforded the opportunity to

17

take jurisdictional discovery.

18

Defendant based its motion to dismiss on information found outside of the Complaint.

19

20

Plaintiff should be permitted to conduct jurisdictional discovery to assess the accuracy of Mr.

21

Wang's factual claims and to assess the amount in controversy as to the entire class.  Discovery is

22

ordinarily granted where a more satisfactory showing of the facts is required or contested for

23

jurisdictional purposes.  *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540

24

(9th Cir. 1986) (citation omitted); *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir.

25

2003) (reversing a district court's decision not to permit discovery; allowing additional discovery

26

to establish federal subject matter jurisdiction because the extent of federal involvement in the

27

action is contested); *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (allowing for the

28

Plaintiff to engage in limited jurisdiction discovery regarding the amount in controversy if it is called in to question) (quoting *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 n. 1 (9th Cir. 1977)); *Brophy v. Almanzar*, No. 17-01885, 2018 WL 5094920, at *4 (C.D. Cal. May 3, 2018) (ordering the parties to conduct jurisdictional discovery to clarify whether the amount-in-controversy requirement has been met); *Admiral Ins. Co. v. Aspen Ins. UK Ltd.*, No. 17-0703, 2017 WL 6945090, at *1 (S.D. Cal. June 16, 2017) ("The Court notes that it finds it applicable to allow this limited jurisdictional discovery as it would be contrary to judicial economy to remand this action to state court, have Defendants serve the same discovery on Plaintiff following remand, and then have the matter removed back to federal court if the amount-in-controversy was established.").

Plaintiff has already issued discovery to determine the amount in controversy: a Fed. R. Civ. P. 30(b)(6) deposition request, interrogatories, and a request for production have been served on Defendant.  Defendant should be required to respond to those requests and to make a witness available for a Rule 30(b)(6) deposition.  *See Ignacio v. ADP Inc.*, No. 14-1115, 2014 WL 12639095, at *1 (C.D. Cal. Dec. 16, 2014) (ordering the defendant to answer the plaintiff's jurisdictional discovery requests).

## IV.     Discovery Will Show That The Amount In Controversy Is At Least $5 Million.

Plaintiff is confident that discovery will show that the amount in controversy is in fact at least $5 million.  The math is simple.  Based solely on products for sale from its website, it appears that Defendant has sold at least seventeen models of Power Banks.  *See* Blankinship Decl., Exs. H-J.  Prices at other retail outlets are likely higher, and it is likely that Defendant sold more models than those Plaintiff has so far been able to identify.  Per the Wang Declaration (¶ 4-5), the average units sold of the two units for which Defendant has provided detailed sales figures is 7,907.  Extrapolating to all the models so far identified, Defendant sold 126,512 Power Banks;

at an average price of $48 (a reasonable assumption given that Inland Power Banks sell for as much as $69.99, *see* Blankinship Decl., Ex. I), the total sales price of all units sold is plausibly $6,072,576.

Defendant contends that purchase price is not the proper measure of damages for purposes of determining amount in controversy. Def. Mem. at 7-8. As discussed below, Defendant is wrong. But even if the measure of damages is measured by the benefit of the bargain (here the difference in the capacity as represented versus as delivered), this Court still has jurisdiction.[4] The average of the capacity deficiency in the two models tested by Plaintiff is 36%; 36% of $6,072,576 is $2,186,127.36. Assuming a 1:1 punitive damages ratio, that amount is $4,372,254.72. The addition of attorneys' fees and the value of injunctive relief puts the amount well over $5 million.

### A. Purchase Price Is The Proper Measure Of Damages For CAFA Purposes.

The purpose of CAFA is to shield defendants from having to defend themselves against class actions in state court. Accordingly, the test for whether the amount-in-controversy plead is sufficient is not based on whether a claim can be ultimately successful but what the plaintiff has plead. Here, Plaintiff seeks the return of his and the members of the putative classes' purchase price. ¶ 83. This Court should not rule that such damages in this circumstance are not recoverable to a legal certainty. *See Stern v. RMG Sunset, Inc.*, No. 17-1646, 2018 WL 2296787, at *6 (S.D. Cal. May 21, 2018) ("Based on this language in the FAC, the Court finds it plausible that some members of the class would seek damages beyond restitution of the surcharge. Moreover, Plaintiff's prayer for relief distinguishes between restitution and damages. Thus, Plaintiff conceived receiving some award beyond 'restitution and disgorgement of Defendants'

---

[4] Defendant contends that benefit of the bargain damages should be measured by its profits, but there is no support for that argument. From the perspective of a consumer, it is the mAh capacity that determines the value of a Power Bank. ¶ 21. Thus, the difference between the amount of mAh's provided versus those promised is the proper measure of benefit of the bargain damages.

ill-gotten gains.'  The Court must assume that Plaintiff's claims are true and that he will prevail on those claims at trial.  Therefore, the Court considers the full cost of the meals in the amount in controversy."); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746, 2009 WL 1635931, at \*6 (N.D. Cal. June 5, 2009) ("A remedy for breach of an express warranty should provide the buyer with the 'substantial value of the bargain.'  *See* UCC § 2–719 Official Comment 1.  Here, a full refund of the purchase price provides substantially the same value as the non-defective bed for which the parties initially bargained."); *c.f.*, *Ebin v. Kangadis Food Inc.*, No. 13-2311, 2013 WL 3936193, at \*3 (S.D.N.Y. July 26, 2013) (finding CAFA amount in controversy met, citing *Suber v. Chrysler Corp.*, 104 F.3d 578, 589 (3d Cir. 1997), *as amended* (Feb. 18, 1997) ("[A] consumer who is damaged by the failure of a dealer or manufacturer to comply with a warranty obligation can file suit to recover the purchase price plus collateral damages."), and *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 540 (E.D.N.Y. 2006) ("[A] buyer may obtain a refund of the purchase price from a manufacturer for breach of an express warranty.")).

**B.**     **The Court Can Consider Plaintiff's Anticipated Lodestar In Determining Amount In Controversy.**

Even using the 25% benchmark, this Court should not conclude that the amount is controversy is not met to a legal certainty.  However, the Ninth Circuit has also affirmed the use of the lodestar method for determining attorney's fees in the context of class actions.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001) (finding that a state may adopt the lodestar method for determining reasonable attorneys' fees).  Under this method, the court "multipli[es] ... the number of hours reasonably expended by a reasonable hourly rate."  *See id.*

Using the lodestar method of calculating attorneys' fees further demonstrates that the amount in controversy is met here.  Indeed, in a recent consumer class action, counsel for plaintiff amassed more than $1.5 million in attorney fees.  *See Edwards v. N. Am. Power & Gas, LLC*, 120

F. Supp. 3d 132 (D. Conn. 2015) (ECF No. 133, August 3, 2018).  "The reasonableness of attorney's fees, when such fees are unascertainable on the face of the complaint, can be calculated by looking to other attorney's fees awards in similar cases." *Garcia v. ACE Cash Express, Inc.*, No. 14-0285, 2014 WL 2468344, at *5 (C.D. Cal. May 30, 2014) (holding that attorney's fees should be part of the amount in controversy when the codes cited in the complaint authorize the court to grant the fees) (citing *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (holding that it is appropriate to look to emotional distress damage awards in similar cases when calculating the amount in controversy)); *see also Garnett v. ADT LLC*, 74 F. Supp. 3d 1332, 1337 (E.D. Cal. 2015).

### C.    A One To One Punitive Damages Ratio Is Conservative.

Punitive damages are to be included in the amount-in-controversy calculation when they have been sought in the complaint.  *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). Defendant proposes a 1:1 ration and cites *Guglielmino* to support its argument that the ratio should be used to calculate punitive damages.  Def. Mem. at 8-9.  However, for the purpose of calculating the amount in controversy, the ratio of 1:1 for punitive and economic damages has been described as "conservative" in the exact case Defendant used to support its argument. *Guglielmino*, 506 F.3d at 701;  *Zapata Fonseca v. Vigo Importing Co.*, No. 16-02055, 2016 WL 6249006, at *2 (N.D. Cal. Oct. 26, 2016); *Bayol,* 2015 WL 4931756, at *9.

### D.    The Value Of Injunctive Relief Is Plausibly $1.5 Million.

The amount in controversy also includes the value of injunctive relief.  *In re Ford Motor Co./Citibank (S.D.), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001).  This amount can be determined from either the plaintiff classes or the defendant's "viewpoint" in the context of a CAFA action. *Tompkins v. Basic Research LLC*, No 08-244, 2008 WL 1808316, at *4 (E.D. Cal. Apr. 22, 2008).  It appears that as of February 21, 2019, Inland still sells at least thirteen models of Power

1  Banks.  Blankinship Decl., Ex. K.[5]  If Inland has 2000 units of each model (about one fourth of

2  the average number of Power Banks matching the models Plaintiff purchased) that it can and

3  apparently is selling, then there are 32,000 models that may still be sold.  At $48 each, that puts

4  another $1,536,000 into controversy.

5

6  Moreover, courts routinely order corrective advertising in false advertising cases.  *See,*

7  *e.g.*, *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663 (2006); *Novartis Corp. v.*

8  *F.T.C.*, 223 F.3d 783, 787-789 (D.C. Cir. 2000) (upholding corrective advertising remedy).  Such

9  advertising to correct years of deceptive marketing will cost at a minimum hundreds of thousands

10  of dollars.

11  <center>**CONCLUSION**</center>

12  For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's

13  Motion to Dismiss or in the alternative allow Plaintiff to conduct jurisdictional discovery.

14

15  Respectfully submitted,

16  **FINKELSTEIN, BLANKINSHIP,**

17  **FREI-PEARSON & GARBER, LLP**

18  DATED: March 11, 2019          By:   /s/ *D. Greg Blankinship*
                                            D. Greg Blankinship

19  D. Greg Blankinship (*pro hac vice*)

20  Jean Sedlak (SBN 267659)
    445 Hamilton Ave, Suite 605

21  White Plains, New York 10601
    Telephone: (914) 298-3290

22  gblankinship@fbfglaw.com
    jsedlak@fbfglaw.com

23

24

25

26  [5] Even if Defendant stops selling Power Banks voluntarily as a result of this litigation, it can restart anytime and therefore this Court can and should still enter an injunction forbidding such sales absent changes to the Power Banks to render their sale not deceptive.  *See Rosebrock v.*

27  *Mathis,* 745 F.3d 963, 971 (9th Cir. 2014) (a party may not moot a claim for injunctive relief simply by voluntarily ceasing the alleged misconduct, because it could then resume its activity

28  after the claim is dismissed).

1

2                                    **KAPLAN FOX & KILSHEIMER LLP**

3    DATED: March 11, 2019          By:   /s/ *Laurence D. King*
                                            Laurence D. King
4
                                     Laurence D. King
5                                    Mario M. Choi
                                     350 Sansome Street, Suite 400
6                                    San Francisco, CA 94104
                                     Telephone:  415-772-4700
7                                    Facsimile:   415-772-4707
                                     lking@kaplanfox.com
8                                    mchoi@kaplanfox.com

9                                    *Counsel for Plaintiff*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

2

  I, D. Greg Blankinship, attest that concurrence in the filing of this document has been

3

obtained from the other signatory.  I declare under penalty of perjury under the laws of the United

4

States of America that the foregoing is true and correct.

5

  Executed this 11th day of March, 2019, at White Plains, New York.

6

             */s/ D. Greg Blankinship*

7

             D. Greg Blankinship

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28